UNITED STATES of America,

v.

James A. ESSIG, Appellant.

No. 92–1514.

United States Court of Appeals,
Third Circuit.

Submitted Under Third Circuit Rule 12(6)
June 23, 1993.

Decided Nov. 1, 1993.

Sur Petition for Rehearing
Jan. 5, 1994.

Michael J. Rotko, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty. Chief of Appeals, Roland B. Jarvis, Asst. U.S. Atty., Office of U.S. Atty., Philadelphia, PA, for appellee.

Louis J. Fanti, Law Office of Louis J. Fanti, Philadelphia, PA, for appellant.

Present: STAPLETON, MANSMANN and HUTCHINSON, Circuit Judges.

## OPINION OF THE COURT

HUTCHINSON, Circuit Judge.

James A. Essig ("Essig") appeals an order of the United States District Court for the Eastern District of Pennsylvania denying his petition under 28 U.S.C.A. § 2255 (West 1971) for relief from a federal criminal conviction.[1] Essig says he was improperly convicted of making a false statement in an application to purchase a firearm from a registered dealer, a violation of 18 U.S.C.A. § 922(a)(6) (West Supp.1993).[2] His appeal raises three important issues of first impression in this Court, one procedural and two substantive. They are: (1) whether this Court should consider issues a counseled appellant raises *pro se* under the circumstances of this case; (2) what constitutes a restoration of "civil rights" within the meaning of the provision in the Firearms Owners' Protection Act of 1986, 18 U.S.C.A. § 921(a)(20) (West Supp.1993) which restores a convict's right to possess a firearm; and (3) whether the Sentencing Reform Act overrules this Court's holding in *United States v. Baylin*, 696 F.2d 1030 (3d Cir.1982) and *Diggs v. United States*, 740 F.2d 239 (3d Cir.1984) that *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1984) cause

---

1. Section 2255 provides in pertinent part:

 A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, ... or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

 28 U.S.C.A. § 2255.

2. Section 922(a)(6) provides:
 (a) It shall be unlawful—

 . . . . .

 (6) for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed import-

er, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition under the provisions of this chapter.

18 U.S.C.A. § 922(a)(6).

and prejudice standard does not apply to collateral review of sentencing errors.

We hold as follows: (1) for the reasons set forth in Part IV–A, *infra*, that an appellate court has discretion, in the interest of judicial efficiency, to consider the *pro se* arguments of a counseled appellant and should exercise it under the peculiar circumstances that exist here; (2) for the reasons set out in Part IV–B, *infra*, that the federal Firearms Act's prohibition against possession of a firearm by a person convicted of a state crime punishable by a term of imprisonment of more than two years or a federal crime punishable by a term of imprisonment of more than one year is a disability that is not removed unless the convicting state has restored all the convict's civil rights, including the right to serve as a juror; and (3) for the reasons set forth in Part V, *infra*, that the Sentencing Reform Act overrules our holding in *Baylin* and *Diggs* that *Frady* 's cause and prejudice standard does not apply on collateral review of sentencing errors under § 2255.

Accordingly, after consideration of all of Essig's arguments, we conclude that the order of the district court should be affirmed.

## I.

■ Essig claims he is entitled to relief under § 2255 because the district court im-

posed his June 19, 1991, eight-month sentence for a federal firearms offense in violation of law.[3] The June 19, 1991, conviction followed Essig's March 18, 1991, guilty plea to making a false statement in his application to purchase a firearm from a licensed dealer. Essig entered his guilty plea pursuant to a January 27, 1991, plea agreement. He had counsel throughout the criminal proceedings, but he did not appeal his conviction and he did not object in the sentencing court to the calculation of his sentence under the United States Sentencing Guidelines or to the Presentence Investigative Report on which it was based.

The false statement that Essig made was his denial of a Pennsylvania conviction for corrupting the morals of a minor. That conduct violated section 6301(a) of that state's criminal code. 18 Pa.Cons.Stat.Ann. § 6301(a) (1983). A violation of section 6301(a) is a misdemeanor of the first degree.[4] In Pennsylvania, misdemeanors of the first degree subject the offender to a maximum term of five years in prison. *See* 18 Pa.Cons. Stat.Ann. § 1104(1).[5] The state court gave Essig two years probation.

The district court fully explained the pending federal charges to Essig before it accept-

---

**3.** Essig's eight month sentence was imposed on June 19, 1991. Thus it may have already expired by April 13, 1992, when Essig filed his § 2255 petition. If so, this did not deprive the district court of jurisdiction. Essig was still subject to a three year period of supervised release. Therefore, the district court had jurisdiction when the petition was filed because Essig was still "a prisoner in custody" within the meaning of § 2255. *See Maleng v. Cook*, 490 U.S. 488, 491, 109 S.Ct. 1923, 1925, 104 L.Ed.2d 540 (1989) (citing *Jones v. Cunningham*, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)). Section 2255 specifically gives this Court jurisdiction over appeals from any orders entered under a § 2255 petition. *See* 28 U.S.C.A. § 2255.

Arguably, § 2255 is not subject to all of the technical requirements that attend writs of *habeas corpus* because it was intended, in its current form, to be a restatement of the ancient common law writ of *error coram nobis. See* H.R.Rep. No. 2646, 79th Cong.2d Sess. (1946) "[§ 2255] provides an expeditious remedy for correcting erroneous sentences without resort to habeas corpus" and noting that its passage has the approval of the Judicial Conference of the United States as a result of a report chaired by the late Judge

Albert Maris of this Court (quoted in historical note to 28 U.S.C.A. § 2255 (West 1981)); *United States v. Frady*, 456 U.S. 152, 182 n. 5, 102 S.Ct. 1584, 1589 n. 5, 71 L.Ed.2d 816 (1982) (Brennan, J. dissenting); *see, generally, United States v. Morgan*, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954).

**4.** Section 6301(a) provides:

(a) **Offense defined.**—Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices, or encourages any such minor in the commission of any crime ... is guilty of a misdemeanor in the first degree.

18 Pa. Const. Stat.Ann. § 6301(a) (1983).

**5.** Section 1104 provides in relevant part:

A person who has been convicted of a misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall not be more than:

(1) Five years in the case of a misdemeanor of the first degree.

18 Pa.Cons.Stat.Ann. § 1104(1) (1983).

ed his guilty plea and Essig acknowledged that his violation of § 922(a)(6) was knowing. Proceeding *pro se* in the district court on his subsequent § 2255 petition, Essig argued that his state conviction for corrupting the morals of a minor was not a "felony" and therefore not a serious enough crime to require disclosure on his application for the purchase of a .357 Magnum Ruger revolver. At its core, Essig's argument that his failure to disclose his state conviction for corrupting the morals of a minor was not serious enough to subject him to criminal liability under § 922(a)(6) depends on whether that conviction was material to his right to receive a firearm.[6] Arguably, it would not be material if the state crime he omitted from his application was not a crime that prohibited him from receiving a firearm under federal law.

## II.

At first glance, the text of § 922(g)(1) appears to doom Essig's argument on materiality.[7] As we shall soon see, however, the words of § 922(g)(1) do not always mean what they say. For instance, § 921(a)(20) provides in relevant part:

The term "crime punishable by imprisonment for a term exceeding one year" does not include—

. . . . .

(B) any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of *two years* or less

. . . .

Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C.A. § 921(a)(20) (West Supp.1993) (emphasis added). Though § 922(g)(1) makes it unlawful for a person "convicted *in any court,* of a crime punishable by imprisonment for more than one year" (emphasis added) to "receive [a] firearm," § 921(a)(20)(B) necessarily limits the phrase "any court" to "any court except a state court" unless we are willing to say "one year" means "two years."[8]

Any potential one year/two year conflict between § 922(g)(1) and § 921(a)(20)(B) has no adverse effect on Essig because his state conviction is punishable by imprisonment for up to five years.[9] In reaching its conclusion that Essig had not raised a cognizable claim under 28 U.S.C.A. § 2255, the district court thoroughly reviewed the record surrounding Essig's § 922(a)(6) guilty plea and sentence. It found that Essig was fully aware of his Pennsylvania conviction for corrupting the morals of a minor at the time he gave the sworn statement federal law required before he could purchase the revolver. Based on an admission said to be mentioned in the probation officer's Presentence Investigative Re-

---

**6.** Essig does not expressly develop his argument in terms of materiality. He argues simply that his misdemeanor conviction is not a serious enough crime to deprive him permanently of his right to bear arms. We think, however, the argument implies that his conviction for corrupting the morals of a minor was not material to the "lawfulness" of a sale of the .357 Magnum revolver to him.

**7.** Section 922(g) provides, in part:
It shall be unlawful for any person—
(1) who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year; . . .
to ship or transport in interstate or foreign commerce, or possess in or affecting commerce any firearm or ammunition; or to receive any firearm or ammunition which has

been shipped or transported in interstate or foreign commerce.
18 U.S.C.A. § 922(g) (West Supp.1993).

**8.** Judges, like Alice, are sometimes surprised by the use of words in this way. We need to be reminded, as Humpty Dumpty reminded her, that it all depends on who is master, the words or their user. *See* Lewis Carroll, *Through the Looking–Glass* 245 (World Publishing Co. ed. 1946) (1872).

**9.** Essig ignores the statute's peculiar equation of one year with two years when state crimes are involved, and so will we hereafter because it has no effect on this case. It is not logically relevant to any of the arguments made by Essig or on his behalf. It may not be possible, however, to ignore it in all cases.

port on Essig, the district court also found that he had been convicted of several other crimes punishable by imprisonment for a term exceeding one year.[10]

Section 922(g)(1) makes no reference to "felonies" but instead makes it unlawful for any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year" to receive a firearm.[11] Essig's statement that he had not been convicted of such a crime thus seems to be a false statement that is material under § 922(a)(6) and section 8(B) of Form 4473, the application the Secretary of the Treasury requires prospective purchasers of firearms to sign. In this appeal, however, Essig, now with counsel, rings some changes on that argument, which demonstrate that there is not much about this case that is simple.

### III.

■ We deal first with counsel's contention that Essig's state conviction did not deprive him of the right to possess a firearm. Perhaps recognizing the difficulty that an argument based solely on the distinction between "felony" and "misdemeanor" poses. Essig's counsel on this appeal contends that the Pennsylvania crime of corruption of the morals of a minor is not a crime that should have any effect on Essig's right to possess a firearm because the state court granted Essig probation instead of subjecting him to imprisonment under state law for more than "one year." Counsel concedes "a crime pun-

ishable by imprisonment for a term exceeding one year" is a crime for which the maximum permissible sentence, rather than time actually served, is more than one year under presently controlling case law.[12] Nevertheless, he advances a "good faith argument" for reconsideration of this question based on what he perceives as an ambiguity in § 922. Counsel argues as follows: Section 922 is ambiguous because it does not use the term "maximum sentence." Moreover, § 921(a)(20) creates an exception to the prohibitions of § 922 when a defendant's civil rights have been restored.[13] This exception indicates that Congress intended to sanction only dangerous offenders, not unintentional technical violators. Thus, counsel contends, the term "punishable" in § 921(a)(20) means actually "punished" by a year or more of incarceration. Because Essig was not actually sentenced to a year or more in prison, counsel contends that Essig is only a technical violator within the terms of §§ 921(a)(20) and 922(a)(6).

The United States Supreme Court's decision in *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), *overruled on other grounds by* Firearms Owners' Protection Act of 1986, 18 U.S.C.A. § 921(a)(20), controls this issue. In *Dickerson,* the Court noted that under § 922(g), "[i]t was plainly irrelevant to Congress whether the individual in question actually receives a prison term; the statute imposes disabilities on one convicted of 'a crime punishable for imprisonment for a

**10.** The details that would enable us to determine whether these crimes are state crimes punishable by more than two years in prison and are therefore countable for federal purposes are not set forth in the record provided us in this appeal from the district court's denial of Essig's § 2255 petition.

**11.** *See supra* note 7 for text of § 922(g)(1).

Subsection 922(g)(3) also makes it unlawful for a person "who is an unlawful user or addicted to any controlled substance as defined in ... 21 U.S.C. [§] 802 ..." to receive a firearm. 18 U.S.C.A. § 922(a)(3). There is said to be a reference in the sentencing court's record to evidence that Essig was a substance abuser, but again no details appear in the materials presented to us. In addition, if the state crime Essig failed to disclose was a crime of violence, Essig's failure to disclose it would have plainly been material to

his purchase because another section of the Pennsylvania Crimes Code, 18 Pa.Cons.Stat.Ann. § 6105, makes it unlawful for a person convicted of a "crime of violence" to possess a firearm. 18 Pa.Cons.Stat.Ann. § 6105 (1983). No one contends that corruption of the morals of a minor is a crime of violence.

**12.** *See Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 113, 103 S.Ct. 986, 992, 74 L.Ed.2d 845 (1983), *overruled on other grounds by* Firearms Owners' Protection Act of 1986, 18 U.S.C.A. § 921(a)(20), *as acknowledged by United States v. Balascsak,* 873 F.2d 673, 677 (3d Cir. 1989) (in banc); *see also United States v. Schoolcraft,* 879 F.2d 64, 69 (3d Cir.), *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989).

**13.** For the text Essig refers to, *see infra* footnote 15.

term exceeding one year.'" *Id.* at 113, 103 S.Ct. at 992 (quoting 18 U.S.C.A. § 922(g)). Because the Supreme Court has clearly established that it is the potential sentence that controls and not the one actually imposed, we reject Essig's argument as counsel presents it. *See also United States v. Schoolcraft,* 879 F.2d 64, 69 (3d Cir.) (rejecting argument that § 922(g)(1) requires conviction of felony), *cert. denied,* 493 U.S. 995, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989). Accordingly, we reject counsel's argument that federal law does not deprive a convict of his right to possess a firearm unless his sentence actually imposed a prison term of the required length.[14]

## IV.

Essig, in his own *pro se* reply brief, advances the argument that his Pennsylvania conviction is not serious enough to support his federal conviction from a different perspective. He says he should not have been convicted of making a material false statement in violation of § 922(a)(6) because he did not lose his civil rights as a consequence of that conviction and § 921(a)(20), when read in its entirety, excludes crimes that do not affect a convict's civil rights from its definition of crimes punishable by imprisonment for more than one year.[15]

### A.

 Clearly, we are not required to consider Essig's *pro se* argument. Issues that counseled parties attempt to raise *pro se* need not be considered except on a direct appeal in which counsel has filed an *Anders*[16] brief. *Cf. United States v. Mosely,* 810 F.2d 93, 98 (6th Cir.), *cert. denied,* 484 U.S. 841, 108 S.Ct. 129, 98 L.Ed.2d 87 (1987); *Hall v. Dorsey,* 534 F.Supp. 507, 508 (E.D.Pa.1982)

(criminal defendant has no right to hybrid representation both *pro se* and by counsel). This § 2255 proceeding in habeas is not controlled by *Anders. See Pennsylvania v. Finley,* 481 U.S. 551, 555–56, 107 S.Ct. 1990, 1993–94, 95 L.Ed.2d 539 (1987); *see also Peterkin v. Jeffes,* 855 F.2d 1021, 1044–45 (3d Cir.1988). Therefore, before deciding Essig's *pro se* argument on its merits, we must decide preliminarily whether it is appropriate to consider a counseled appellant's *pro se* issue under the circumstances of this case. The rule against considering *pro se* arguments of a counseled party is not without exception. *See Hayes v. Hawes,* 921 F.2d 100, 101 (7th Cir.1990) (although counseled litigants have no Sixth Amendment right to make *pro se* submission on appeal, court of appeals may, in its discretion, consider arguments raised). It is intended to avoid conflicting arguments and to foster judicial efficiency.

Here, Essig's counsel has stated that he plans to file a second § 2255 petition in which he will again raise the civil rights issue Essig is now raising *pro se* and in that second petition seek an evidentiary hearing. Further consideration of that issue will be unnecessary, however, if it has already been decided that the issues counsel is charged with failing to raise lack merit. Thus, present consideration of Essig's *pro se* argument fosters judicial efficiency. Because a § 2255 petitioner may have a limited number of bites at the apple, it may also be to Essig's benefit for us to consider this issue now on its merits.[17]

Other peculiar circumstances which are material to the exercise of our discretion to consider Essig's *pro se* argument attend this appeal. Essig filed the present § 2255 pro-

---

**14.** In his *pro se* brief, Essig also raises the *Dickerson* issue. We will not separately consider it.

**15.** As an aid to comprehension, we repeat here the relevant text of § 921(a)(20):

Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides

that the person may not ship, transport, possess, or receive firearms.

**16.** *See Anders v. California,* 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

**17.** Section 2255 states in part:
The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner. 28 U.S.C.A. § 2255; *see also McCleskey v. Zant,* 499 U.S. 467, 493–97, 111 S.Ct. 1454, 1470–71, 113 L.Ed.2d 517 (1991).

ceeding *pro se.* The district court denied his motion to vacate or set aside his conviction, and Essig, still *pro se,* appealed. An entry on our docket sheet dated January 11, 1993, shows that Louis J. Fanti, Esq., filed an appearance on Essig's behalf. Fanti's name also appears as counsel of record on Essig's brief and appendix. Though Essig thus appears to have been represented throughout this appeal, he also filed his own *pro se* and reply briefs. In his reply brief, he acknowledged that he had initially hired Fanti and authorized Fanti to enter an appearance as his counsel of record, but criticized Fanti's representation, stating:

> Defendant retained attorney Louis J. Fanti to prepare and file his appeal to the third circuit court of appeals. Regrettably [sic], this defendant selected an attorney whos [sic] expertise in Federal criminal law consists of the instant case only. Moreover despite the fact that the defendant gave copy of the attached appeal prepared by myself, attorney Fanti did not raise the pertinent issues mentioned....

Appellant's *Pro Se* Reply Brief at 1.[18] To clarify Fanti's status, this Court ordered Essig to advise it whether he wished Fanti to continue to represent him and, if so, to show cause why his own *pro se* brief and reply brief should not be stricken. Thereafter, in a *pro se* answer to three motions filed by Fanti, Essig stated he no longer wanted Fanti to represent him, but in his answer to the order to show cause he stated that he is satisfied with Fanti's representation.[19]

Essig's basic argument throughout this § 2255 proceeding has been that his conviction for corruption of minors was a "misdemeanor" which was not serious enough to make it unlawful for him to have a firearm. On this basis, he contends that the failure to disclose it is not punishable under § 922(a)(6) because it did not affect his right to own a firearm. Under all these circumstances, we believe it is appropriate to consider Essig's argument that his "civil rights" are unaffected by his Pennsylvania conviction for corrupting the morals of a minor.

### B.

Therefore, we turn to the merits of Essig's *pro se* argument. As we have shown, Essig's sworn statement that he had never been convicted of a crime punishable by imprisonment for more than one year was plainly false because his Pennsylvania conviction was punishable by imprisonment for up to five years. He made that false statement when he answered in the negative a specific question about such convictions in filling out Secretary of the Treasury Form 4337. All buyers of firearms must sign Form 4337 before purchasing a gun from a licensed dealer. *See* 27 C.F.R. § 178.21 (1993) (authorizing prescription of forms to adduce required information).[20]

■ The portion of § 921(a)(20) which generally excludes offenses that have been officially forgiven from the already artificially defined phrase "crime punishable by imprisonment for more than one year" was added

18. Any ineffectiveness on the part of Fanti or Essig himself in this § 2255 proceeding would not, in and of itself, be a basis for a further collateral attack on Essig's conviction. There is no Sixth Amendment right to counsel in a proceeding that collaterally attacks an otherwise final criminal conviction. *Pennsylvania v. Finley,* 481 U.S. 551, 555, 107 S.Ct. 1990, 1993, 95 L.Ed.2d 539 (1987).

19. The three motions Fanti filed asked the court to require the government to provide him with a transcript, to disclose Essig's whereabouts, and to appoint a guardian *ad litem* for Essig. The transcript has since been lodged with our Court and has been available to Fanti. In addition, Essig's answer to the order to show cause indicates that he and Fanti are now communicating. Accordingly, the first two motions are moot. We

will therefore dismiss them. Fanti himself has now asked to withdraw the motion to appoint a guardian *ad litem* for Essig. We have already granted that request.

20. Section 926 of the Act authorizes the Secretary of the Treasury to issue regulations necessary for enforcement. The Firearm Owners Protective Act of 1986 added a provision to § 926 that prohibited the Secretary from using the regulatory power § 926 grants for the purpose of creating a system of registration of firearms or transactions concerning them or to transfer records gathered or maintained under the Act to any other federal or state agency except in the course of the Secretary's investigation into a firearm's disposition "in the course of a criminal investigation." *See* 18 U.S.C.A. § 926(a) (West Supp. 1993).

by the Firearms' Owners Protective Act of 1986. Its purpose was to give federal effect to state statutes that "restore" the civil rights of convicts when they are granted a pardon, have their convictions expunged, or have their civil rights restored. *United States v. Thomas*, 991 F.2d 206, 209 (5th Cir.1993). Section 921(a)(20) thus allows each state to determine for itself whether persons convicted under its law shall be precluded from possessing a firearm under pain of federal criminal law. *Id.* (citing *United States v. Cassidy*, 899 F.2d 543, 546–49 & nn. 9, 11 (6th Cir.1990)); *see also United States v. Essick*, 935 F.2d 28, 31 (4th Cir.1991).

Though § 921(a)(20) does not specifically define the phrase "civil rights," the United States Courts of Appeals for the Fifth, Sixth and Ninth Circuits, among others, have considered its meaning. They have stated, "Congress intended to encompass those rights accorded to an individual by virtue of his [or her] citizenship in a particular state. These rights include the right to vote, the right to seek and hold public office and the right to sit on a jury." *Thomas*, 991 F.2d at 211 (quoting *Cassidy*, 899 F.2d at 549) (alteration in original); *see also United States v. Dahms*, 938 F.2d 131, 133 (9th Cir.1991) (same). Essig was convicted of a first-degree misdemeanor carrying with it a possible term of incarceration of up to five years. He has not shown that he was granted a pardon or amnesty for that conviction. That conviction, however, did not deprive him of the right to vote since he remained free on probation after his Pennsylvania conviction. *See* 25 Pa.Stat.Ann. § 2811 (Supp.1993). Had he received a sentence of imprisonment he could have lost the right to vote, but only while incarcerated. *See* 25 Pa.Stat.Ann. § 2602(w) (Supp.1993); *see also Ray v. Pennsylvania*,

263 F.Supp. 630, 630–32 (W.D.Pa.1967) (Pennsylvania prisoner, whose sentence did not specifically provide for forfeiture of voting rights, was not entitled under Fifteenth Amendment to require that election officials set up voting procedure and equipment to permit him and other prisoners to vote). Essig also seems to have retained the right to hold public office. *See* Pa. Const. art. II, § 7 (prohibiting person with past criminal conviction from holding public office if conviction was for "embezzlement of public moneys, bribery, perjury or other infamous crime").[21] In Pennsylvania, however, a citizen may not serve on a jury if he or she "has been convicted of a crime punishable by imprisonment for more than one year and has not been granted a pardon or amnesty therefor." 42 Pa.Cons.Stat.Ann. § 4502(3) (1981).

Several courts of appeals have decided that the right to serve on a jury is one of the three core civil rights which a person convicted of "a crime punishable by imprisonment for more than one year" must have if he is to retain his right to bear a firearm or have it restored. *See Thomas*, 991 F.2d at 221; *Dahms*, 938 F.2d at 133; *Cassidy*, 899 F.2d at 549.

Ultimately, the question Essig poses is whether his retention of two of the three core civil rights to which § 921(a)(20) refers, the right to vote and the right to hold office, is a restoration of civil rights within the meaning of the statute. This is an issue of first impression in this circuit. Though he has retained some of his basic civil rights and his conviction for corruption of a minor was neither a felony nor a violent or infamous crime under Pennsylvania law, he has not retained them all and he does not present any evidence that the one he has lost, the right to

---

**21.** In Pennsylvania, an infamous crime is one, *inter alia*, that involves a charge of falsehood and affects the public administration of justice. *In re Hughes*, 516 Pa. 90, 532 A.2d 298, 302 (1987) (quoting *In re S.M. Greenberg*, 442 Pa. 411, 280 A.2d 370, 372–73 (1971)). Pennsylvania law defines the crime of corruption of minors as follows:

> Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any

crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, is guilty of a misdemeanor of the first degree.

18 Pa.Cons.Stat.Ann. § 6301(a) (1983). Section 6301(a) is not an offense involving a falsehood affecting the administration of justice. Therefore, it is not an infamous crime disqualifying a person with a past criminal conviction from holding public office. Essig's past conviction for the corruption of minors is not an impediment to his right to hold public office under Pennsylvania law.

serve on a jury, has been restored. In Pennsylvania, a pardon or an expungement of a conviction would generally restore a former convict to all the rights and duties of a citizen of that state. Once a core civil right has been lost, we believe that § 921(a)(20) should be interpreted to require a restoration of civil rights that has the same practical effect as a pardon or expungement of the record.[22]

Essig is still precluded from serving as a juror. He has failed to demonstrate full retention or restoration of his civil rights. Thus, Essig has not shown that he can exercise the three core civil rights that we and other federal courts of appeals have identified as coming within § 921(a)(20)'s exclusion from the Act's prohibition on the possession of guns. Had Essig disclosed his prior conviction on Form 4337, he would have been denied the right to purchase the revolver. His false statement, therefore, was material.

Accordingly, Essig's Pennsylvania conviction for corruption of minors is a predicate conviction under § 921(a)(20), and his false statement that he had never been convicted of a crime punishable by more than one year's imprisonment subjected him to criminal punishment under § 922(a)(6).

## V.

Counsel makes one additional argument on Essig's behalf. He contends the district court erred in failing to reduce Essig's sentence under section 2K2.1(b)(2) of the United States Sentencing Guidelines because Essig purchased the firearm solely for lawful sporting purposes or collection. If so, a decrease in the offense level from level ten to level six would be warranted.[23] *See* United States Sentencing Commission, *Guidelines Manual*, § 2K2.1(b)(2) (Nov. 1992) ("If the defendant ... possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level. . . ."). In the amended § 2255 petition Essig presented to the district court, he specifically claimed, for this reason, that "tabulation of the sentencing guidelines" was error. Appendix at 13. He did not raise this issue before the sentencing court or take any direct appeal from his sentence.[24]

▮▮▮▮ Generally, if a prisoner's § 2255 petition raises an issue of material fact, the district court must hold a hearing to determine the truth of the allegations. *Walker v. Johnston*, 312 U.S. 275, 285, 61 S.Ct. 574, 579, 85 L.Ed. 830 (1941); *United States v. Biberfeld*, 957 F.2d 98, 102 (3d Cir.1992). The district court held no such hearing here. In order to determine whether Essig was entitled to a hearing, we must decide that his allegations were material; usually a two step inquiry. We must first inquire whether Essig's failure to raise any objection at sentencing or on direct appeal constitutes a procedural waiver. If there is no waiver, we then inquire whether he has alleged an error serious enough to warrant consideration under

---

**22.** Because of Essig's continuing disability with respect to jury service, we do not reach the issue of whether the state must act affirmatively to restore civil rights where an otherwise qualifying conviction does not deprive the convict of a core civil right. That question has divided the United States Courts of Appeals. *Compare United States v. Ramos*, 961 F.2d 1003, 1008 (1st Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992) (affirmative act required) *with United States v. Thomas*, 991 F.2d 206, 208–13 (5th Cir.1993) (affirmative act not required); *United States v. Gomez*, 911 F.2d 219, 221 (9th Cir.1990) (same).

**23.** Essig first raised this issue in the same motion to amend his § 2255 petition that added his restoration of civil rights claim.

**24.** Essig failed to relate this issue to ineffectiveness of counsel until the appeal of the denial of

his § 2255 petition. Therefore, to the extent that counsel's argument is one based on the ineffectiveness of sentencing counsel for failure to raise the 2K2.1(b)(2) issue before the sentencing court, we decline to address it at this time. *See* Brief for Appellant at 5 ("[B]ecause of ineffective assistance of counsel (*i.e.* Mr. Essig himself), Mr. Essig did not request an evidentiary hearing on the issue of whether or not the firearm was purchased solely for lawful sporting purposes or collection, thereby decreasing the offense level. . . .). If Essig attempts to raise the ineffectiveness claim in another § 2255 petition, it will be up to the district court to decide in the first instance whether his use of successive petitions is an abuse of the writ. *See McCleskey*, 499 U.S. at 493–97, 111 S.Ct. at 1470–71. We express no opinion on that issue here.

§ 2255.[25] *See Biberfeld*, 957 F.2d at 102. If the error is waived we do not reach the question whether it is serious enough to permit collateral review under § 2255.

██ Thus, to the extent that counsel relies upon an argument that the sentencing court erred when it assigned Essig an offense level of more than six, we are compelled to examine the consequences of Essig's failure to raise it in the criminal proceeding. The government contends that Essig's failure to challenge his offense level at his sentencing hearing or take a direct appeal from the resulting sentence is a waiver of the sentencing issue,[26] precludes us from considering it unless Essig can meet the "cause and prejudice" standard of *United States v. Frady*, 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1984).[27] In making its cause and prejudice argument, the government does not discuss nor cite this Court's decisions in *United States v. Baylin*, 696 F.2d 1030 (3d Cir.1982) or *Diggs v. United States*, 740 F.2d 239 (3d Cir.1984). In those cases which arose and were decided before the effective date of the Sentencing Reform Act, we held that *Frady*'s "cause and prejudice" standard does not apply when a defendant raises sentencing errors in a § 2255 petition without first challenging the sentence on direct appeal.

Baylin was a tax evader who entered a guilty plea to one count of income tax evasion. The presentence investigation report ("PSI") mentioned a number of earlier convictions for tax evasion. Baylin did not object. The district court referred to these additional convictions in sentencing. *Baylin*,

696 F.2d at 1033. The Parole Commission later determined that the defendant would have to serve out most of his term. *Id.* at 1034. Thereafter, Baylin filed a § 2255 motion in which he challenged, among other things, the inclusion of his earlier convictions in the PSI. Because Baylin failed to object to either the PSI or the sentence, the government argued that he had to meet *Frady*'s cause and prejudice standard before he could challenge the PSI in a § 2255 proceeding. *Id.* at 1035. In declining to require a showing of cause and prejudice, the *Baylin* court distinguished *Frady* on two grounds: (1) that § 2255 was a functional substitute for a direct appeal of a sentence following a guilty plea, and (2) that a defendant should not be held accountable for not raising objections in a timely fashion because the procedure for objecting to sentencing errors was unclear. *Id.* at 1036.

In *Diggs v. United States*, 740 F.2d 239 (3d Cir.1984), Diggs failed to appeal the district court's denial of his Federal Rule of Criminal Procedure 35(b) motion for sentence reduction. *Diggs*, 740 F.2d at 241. Not until six months after that denial did Diggs, proceeding *pro se*, file a "motion for rehearing" or, alternately, for relief under § 2255. *Id.* at 242. We followed *Baylin*; but recognizing the right to appeal a denial of relief under Federal Rule of Criminal Procedure 35(b) as it then existed, we questioned our conclusion in *Baylin* that § 2255 was a necessary substitute for the heretofore severely restricted right to appeal a sentencing error. *Id.* at 244.

---

**25.** Section 2255 does not afford a remedy for all errors that may be made at trial or sentencing. *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). The alleged error must raise "a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* at 185, 99 S.Ct. at 2240 (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). Essig claims that the sentencing court erred in computing the base level of his sentence by failing to take into account his alleged ultimate intention to use the firearm for sport or collection purposes; but he, however, never drew this to the attention of the court during sentencing. While we recognize that the sentencing of a defendant based on material misinformation raises an error of constitutional dimension, *see Townsend v. Burke*, 334

U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), we will not here decide whether the sentencing court's failure to use a base level neither party suggested at the time of sentencing meets the criteria for § 2255, because we believe the objection has been waived.

**26.** Essig had counsel throughout the sentencing proceeding but present counsel does not raise this sentencing issue through a claim of ineffectiveness of counsel. *See supra* note 24.

**27.** While courts often apply *Frady* in the context of petitions for *habeas corpus*, in fact *Frady* addresses a § 2255 petition, which as we indicated *supra* note 3, incorporates remedies available under the ancient writ of *error coram nobis*.

Nevertheless, in considering whether a defendant's failure to appeal a denial of a Rule 35(b) motion was a procedural default governed by *Frady's* cause and prejudice standard, we stated: "We do not see how this case can be meaningfully distinguished from *Baylin.*" *Id.* at 244. We repeated the observation that "the rules of criminal procedure [in the sentencing phase] are not . . . well marked." The *Diggs* panel, applying our former Internal Operating Procedure 9.1, found *Baylin* controlling and refused to apply *Frady's* cause and prejudice standard to procedural waiver of sentencing errors first raised in a § 2255 petition, thus continuing to use the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). *Id.* 740 F.2d at 244–45.

Our approach in *Baylin* and *Diggs,* which was the subject of some criticism even before the Sentencing Reform Act became effective,[28] cannot survive that statute. The question of whether *Diggs* and *Baylin* survive the Sentencing Reform Act has been the subject of discussion in the district courts in this circuit. They have raised the issue whether the Sentencing Reform Act's provisions for evidentiary hearings on sentencing and for direct appeal from sentences imposed after such hearings have implicitly overruled *Diggs* and *Baylin,* by removing their twin rationale. Thus, in *United States v. Vancol,* 778 F.Supp. 219, 225 n. 13 (D.Del.1991), *aff'd,* 970 F.2d 901 (3d Cir.1992), the court noted that this Court, itself, signaled discomfort with *Baylin* when it noted, in *Diggs,* potential shortcomings in some of *Baylin's* reasoning.

In *United States v. Quinones,* 1993 WL 273989 (E.D.Pa. June 23, 1993), the district court decided directly that *Baylin* and *Diggs* did not survive the Sentencing Reform Act. In *Quinones,* the defendant attempted to raise objections in a § 2255 proceeding which he had failed to assert at sentencing. After a full discussion of *Baylin, Diggs,* and *Williams,* the court in *Quinones* stated:

> *Baylin* and *Diggs* were decided before the November 1, 1987 implementation of the sentencing guidelines. Since then there have been changes in the Federal Rules of Criminal Procedure which brought about a strict formalization of sentencing by amendments to Fed.R.Crim.P. 32 in 1983 and 1989. Sentences under the new guidelines are now regularly appealed. In the case of a guilty plea, a defendant now must be informed that he has the right to appeal his sentence, Fed.R.Crim.P. 32(a)(2), and in addition, the presentence report must be disclosed and the court must make certain counsel and the defendant had an opportunity to review on [sic] the accuracy of the presentence report at least ten days prior to sentencing. Fed.R.Crim.P. 32(c)(3)(A). The court must make detailed findings concerning matters controverted in the presentence report, Fed.R.Crim.P. 32(c)(3)(D). The district court rule mandated by Sentencing Guideline Section 6A1.1 now requires that objections be made to the guidelines. . . . Such safeguards for a defendant who admits guilt go well beyond a normal trial situation in which a defendant, who is claiming innocence, fails to object and thereby becomes subject to the *Frady* standard.

*Id.* at *5 (footnotes omitted). *See also United States v. McAllister,* 1993 WL 311970, *3 (E.D.Pa. Aug. 9, 1993) (questioning whether *Baylin* and *Diggs* are still good law because "the Third Circuit has not ruled on this issue in the context of the sentencing guidelines and the weight of authority in other circuits which have addressed the issue since the promulgation of the guidelines is contrary to *Baylin.*").[29] This reasoning is persuasive.

**28.** *See Williams v. United States,* 805 F.2d 1301, 1306 (7th Cir.1986), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1978, 95 L.Ed.2d 818 (1987), (rejecting *Diggs* and *Baylin* and applying *Frady* to a § 2255 proceeding attacking a sentence).

**29.** Courts outside our circuit have approved application of the *Frady* standard in a § 2255 attack on sentencing. *See United States v. Walling,* 982 F.2d 447, 449 (10th Cir.1992) (applying the *Frady* "cause and prejudice" standard to determine whether a defendant's failure at sentencing to challenge a recommendation for an upward adjustment barred his raising of that issue in a subsequent § 2255 proceeding alleging that the government's support of the recommendation violated his plea agreement); *Isabel v. United States,* 980 F.2d 60, 64 (1st Cir.1992) (applying cause and prejudice standard to failure to object to district court refusal to reduce base level based on acceptance of responsibility).

The Sentencing Reform Act greatly changed the methods by which sentences are imposed and challenged. *See United States v. Jordan,* 915 F.2d 622, 626–28 (11th Cir. 1990), *cert. denied,* 499 U.S. 979, 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991). Under the Act, direct appeals are routine and the defendant and counsel have numerous opportunities to object to sentencing errors, both substantive and procedural.[30] While 18 U.S.C.A. § 3742, does not wholly preclude a § 2255 remedy for fundamental sentencing errors, *see Jordan,* 915 F.2d at 627–29, we conclude that a defendant who fails to object to errors at sentencing and subsequently attempts to raise them on direct appeal must demonstrate "cause and prejudice" for that failure. The procedure for registering objection to errors in a sentencing proceeding is no longer obscure, and § 2255 is no longer a necessary stand-in for the direct appeal of a sentencing error because full review of sentencing errors is now available on direct appeal. *See* S.Rep. No. 98–225, 98th Cong.2d Sess. 151, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3334 ("Appellate review of sentences is essential to assure that the guidelines are applied properly...."); *see also id.* at 155, *reprinted in* 1984 U.S.C.C.A.N. at 3338 ("The Committee believes that section 3742 creates for the first time a comprehensive system of review of sentences that permits the appellate process to focus attention on those sentences whose review is crucial to the functioning of the sentencing guidelines system, while also providing adequate means for correction of erroneous and clearly unreasonable sentences."). If defendants could routinely raise, in a § 2255 collateral proceeding, errors in sentencing not raised on direct appeal which the sentencing court had not had an opportunity to correct, Congress's intent of encouraging direct appellate review

of sentences under the Sentencing Guidelines would be frustrated. Moreover, the Federal Rules of Criminal Procedure now plainly set out the procedure that must be used for challenges to presentencing reports and sentencing procedures. *See supra* note 30. Thus, both of the problems that led to our decisions in *Baylin* and *Diggs* have been legislatively removed. Since November 1, 1987, the effective date of the Sentencing Reform Act, defendants have had ample opportunity to raise their sentencing objections in the sentencing court and, if aggrieved by its rulings, to appeal directly. Therefore, we hold *Frady's* cause and prejudice standard applies to § 2255 proceedings in which a petitioner seeks relief from alleged errors in connection with his sentence that he has not directly appealed.

▮ Essig has not complied with *Frady's* cause and prejudice standard. He has, indeed, alleged no cause for his failure to raise his objection before the sentencing court or appeal his sentence on these grounds. "In procedural default cases, the cause standard requires the petitioner to show that 'some objective factor external to the defense impeded counsel's efforts' to raise the claim...." *McCleskey,* 499 U.S. at 493, 111 S.Ct. at 1470 (quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)). As noted, Essig did not raise any issue of ineffectiveness before the district court in this proceeding. Therefore, even if current counsel meant to assert the ineffectiveness of sentencing counsel provided the cause for such omission, *see Murray,* 477 U.S. at 488, 106 S.Ct. at 2645 (constitutionally "ineffective assistance of counsel ... is cause"), we think it would be inappropriate to address the issue on this appeal. *See supra* note 24.

---

**30.** *See* Fed.R.Crim.P. 32(a)(1) ("At the sentencing hearing, the court shall afford the counsel for the defendant ... an opportunity to comment upon the probation officer's determination and other matters relating to the appropriate sentence. Before imposing sentence, the court shall also (A) determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report ...; (B) afford counsel for the defendant an opportunity to speak on behalf of the defendant; and (C) address the defendant personally and determine

if the defendant wishes to make a statement and to present any information in mitigation of his sentence); Fed.R.Crim.P. 32(a)(2) (court must advise criminal defendant of right to appeal sentence); Fed.R.Crim.P. 32(c)(3) (defendant and defendant's counsel permitted opportunity to comment on presentence investigation report); *see also* 18 U.S.C.A. § 3742 (West 1985 & Supp. 1993) (allowing for direct appeal from sentence imposed in violation of law or based on incorrect application of sentencing guidelines).

980

## VI.

For the foregoing reasons, the order of the district court denying Essig's petition for relief pursuant to 28 U.S.C.A. § 2255 will be affirmed.

### SUR PETITION FOR REHEARING

Jan. 5, 1994.

PRESENT: SLOVITER, Chief Judge, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD, ALITO, ROTH and LEWIS, Circuit Judges.

The petition for rehearing filed by appellant *pro se* in the above captioned matter having been submitted to the judges who participated in the decision of this court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.