## UNITED STATES of America

v.

## William R. PORTER.

Civ. A. No. 94–1392.
Crim. No. 90–35.

United States District Court,
W.D. Pennsylvania.

Dec. 28, 1994.

Linda S. Sheffield, for William R. Porter.

Bruce J. Teitelbaum, Asst. U.S. Atty., Pittsburgh, PA, for U.S.

## OPINION

ZIEGLER, Chief Judge.

Pending before the court is the motion of defendant, William R. Porter, for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. On April 18, 1990, defendant was named in a 46 count indictment by a grand jury charging 15 individuals with assorted violations of federal law. Count 1 charged that defendant was a member of a conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act. 18 U.S.C. §§ 1962(d) and 1963. Count 2 charged that defendant was a participant in a racketeering enterprise in violation of 18 U.S.C. §§ 1962(c) and 1963. Count 3 charged that defendant conspired to possess

with the intent to distribute and distributing in excess of 5 kilograms of cocaine and marijuana from 1977 to January 1990 in violation of 18 U.S.C. § 846. Count 12 charged that defendant attempted to possess with intent to distribute in excess of one kilogram of cocaine in violation of 21 U.S.C. § 846. Count 19 charged that defendant retaliated against a witness in violation of 18 U.S.C. §§ 1513(a)(2) and 2.[1]

After a lengthy trial, the jury found defendant guilty at counts 1, 2, 12 and 19, and not guilty at count 3. The court ordered a presentence report and conducted a sentencing conference on January 17, 1991, due to the complexity of the issues. Indeed, this was the first case in which the court had encountered the calculation of the total offense level by reference to a "pseudo count."

The probation office prepared a presentence report dated December 20, 1990, and concluded that the total offense level was 39, and that the criminal history category was II. This produced a guideline imprisonment range of 292 to 365 months. After receipt of defendant's objections and at the request of the prosecution, the probation office issued an addendum to the presentence report on January 21, 1991. The addendum produced a total offense level of 35, a criminal history category of II, and a guideline imprisonment range of 188 to 235 months. The revision was accomplished by recalculating pseudo count 1 and reducing the base offense level from 36 to 32. The base offense level of pseudo count 1 of the presentence report was based on a minimum of 50 kilograms of cocaine but less than 150 kilograms. The base offense level of pseudo count 1 of the addendum was based on 5 kilograms of cocaine.

■ Defendant contends, as we understand it, that he was not afforded the opportunity to read the addendum to the presentence report in violation of Fed.R.Crim.P. 32 and, if provided the opportunity, he would have challenged the inclusion of 5 kilograms of cocaine as part of pseudo count 1 of the addendum.[2] Thus, according to defendant, the judgment of sentence was imposed in violation of the "laws of the United States" and collateral relief is appropriate "to vacate, set aside or correct the sentence," as provided by 28 U.S.C. § 2255.[3] We disagree.

Defendant concedes that he read the presentence report and we note that paragraph 21 of that report reads as follows:

> The major underlying racketeering activity in this case is the distribution of drugs. *In addition to the defendant's involvement in the attempted distribution of 5 kilograms of cocaine,* the defendant is accountable for the conduct of others in furtherance of the execution of the jointly undertaken criminal activity that was reasonably foreseeable by the defendant (Section 1B1.3). In view of his attempted possession of cocaine and his obstruction of justice, the probation officer believes the defendant is accountable for the entire amount of drugs involved in the conspiracy. The guideline for this grouping is found at 2D1.1(a)(3)(c)(4). The base offense level for at least 50 kilograms but less than 150 kilograms is level 36.

Presentence Report at ¶ 21, p. 5. (Emphasis added). Assuming for the sake of argument that defendant did not read the addendum to the presentence report, as he asserts, defendant has suffered no prejudice because pseudo count 1 of the presentence report, and pseudo count 1 of the addendum specifically refer to 5 kilograms as the weight that was involved in the attempt to purchase cocaine from Agent Poiroux. Stated another way, pseudo count 1 of the addendum revised pseudo count 1 of the presentence report by

---

1. Count 7, which charged that defendant threatened to use violence to collect an extension of credit by extortionate means in violation of 18 U.S.C. § 894, was dismissed by the court during trial.

2. Affidavit of William Porter at ¶ 5.

3. Section 2255 provides in pertinent part:
   A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, ... or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

deleting the narcotics that were generated by the other conspirators within the scope of the conspiracy (50–150 kilograms) but retained the 5 kilograms of cocaine that defendant attempted to purchase between July 31 and August 16, 1985.

The fact that defendant did not read the addendum to the presentence report for whatever reason is neither material nor prejudicial because, as we shall explain, defendant was aware of the essential facts on which the trial judge based the judgment of sentence and defendant failed to raise the issue before the district court. Furthermore, defendant did not raise the issue on direct appeal to the Court of Appeals and the law is clear that a judgment of sentence may not be collaterally attacked under the circumstances.

Defendant was represented at trial by an able and experienced criminal lawyer. Following the verdict and preparation of the presentence report, trial counsel filed extensive objections to the conclusions of the probation office. In paragraph 6.E of the "Position of Defendant with Respect to Sentencing Factors," trial counsel stated:

E. Further, the only connection with Mr. Porter to any of the matters, was his attempt to purchase 5 kilograms of cocaine from an Undercover FBI Agent which occurred on or about August 16, 1985. To reiterate, the jury established that in fact Mr. William R. Porter was not involved in the drug conspiracy as outlined in Count 3 of the Indictment which was occurring at or about the same time as the attempt by Mr. Porter.

F. Based upon the aforementioned, the defendant contends that the most that his base level can be would be a level 32.

Appendix of William Porter at 55. As urged by trial counsel, the district court found that the base offense level was 32.

The statement of trial counsel that 5 kilograms was involved in the crime of attempt was supported by the evidence of record and was tactically astute. Agent Poiroux testified that he met defendant and offered to sell 5 kilograms of cocaine for $30,000 per kilogram. Defendant agreed.

Q. Let me rephrase it. Did you, at a point in the conversation with reference to page 12, agree with Mr. Porter on the price and quantity for the sale of cocaine?

A. Yes.

Q. And what was the agreement?

A. $30,000 per kilogram, sir.

Q. Was there a range of kilos for which you would sell at $30,000 per kilo?

A. Up to five kilos.

Appendix of William Porter at 94–95. Thus, faced with the evidence of record, the findings of the jury at Racketeering Act XXI and count 12, and the conclusion of the probation office that 50 to 150 kilograms of cocaine were attributable to defendant in pseudo count 1 of the presentence report, trial counsel acted prudently in conceding that 5 kilograms were involved in the dealings with Poiroux and focusing his attack on the large quantity of drugs that were attributable to defendant by the probation office. The strategic decisions of trial counsel were largely responsible for reducing the base offense level from 36 to 32, lowering the guideline range from 292–365 to 188–235 months, and reducing the period of confinement that defendant was facing by at least 8.7 years.

We have carefully reviewed the pending motion of defendant, the attached memorandum of law, and the reply, and nowhere is there any contention that defendant's trial counsel was ineffective. The omission is understandable. As rehearsed, the efforts of trial counsel were responsible for substantially reducing the period of confinement to which defendant was exposed under the guidelines and we are required to defer to the strategic decisions of trial counsel. *Strickland v. Washington*, 466 U.S. 668, 689–691, 104 S.Ct. 2052, 2065–2066, 80 L.Ed.2d 674 (1984).

■ Defendant was present at trial and presumably heard Agent Poiroux testify that William Porter agreed to purchase up to 5 kilograms of cocaine at $30,000 per kilogram. The jury found that Racketeering Act XXI and count 12 had been proven, and defendant admits that he read the presentence report which contained the inclusion of the 5 kilograms in pseudo count 1. Thus, if defendant

desired to contest the number of kilograms in the dealings with Agent Poiroux, it was his responsibility to bring that fact to the attention of trial counsel before the court imposed judgment of sentence. A defendant cannot sit back and await the findings of a trial court and the decision of the Court of Appeals, and then assert for the first time that he desired to challenge the factual basis of a particular finding in a collateral proceeding.

■ The only explanation that defendant has offered for his failure to challenge the amount of drugs in the Poiroux transaction is that he "did not read the written objections to the first presentence report filed by my then attorney, Patrick Thomassey, prior to his filing those objections." Affidavit of William Porter at ¶ 1. The Supreme Court has made clear, however, that such allegations are insufficient to establish "cause and actual prejudice" within the context of a "double procedural default." *United States v. Frady*, 456 U.S. 152, 168, 102 S.Ct. 1584, 1594, 71 L.Ed.2d 816 (1981).

In *Frady*, the defendant challenged the instructions of the trial court in a collateral proceeding after failing to raise the issue before the district court or on direct appeal. In rejecting the challenge, the Supreme Court held that the defendant failed to sustain the burden of establishing that the omissions "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 170, 102 S.Ct. at 1596.

Recently, the Court of Appeals had occasion to apply the *Frady* test to a collateral proceeding where, as here, the defendant did not contend that his trial counsel was ineffective. *United States v. Essig*, 10 F.3d 968 (3d Cir.1993). In *Essig*, the defendant argued that the district court erred in failing to reduce the offense level from 10 to 6 in calculating the sentence under the Sentencing Guidelines. The Court held that the failure of Essig to raise the issue before the district court or on direct appeal was a procedural waiver that could not be raised in a collateral proceeding absent a contention that trial counsel was ineffective. The Court noted that Essig had "alleged no cause for his failure to raise his objection before the sentencing court or appeal his sentence on these grounds," and in double procedural default cases, the cause and prejudice standard requires a showing that "some objective factor external to the defense impeded counsel's efforts to raise the claim." *Id.* at 979.

The Court of Appeals concluded:

Section 2255 does not afford a remedy for all errors that may be made at trial or sentencing. *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). The alleged error must raise 'a fundamental defect which inherently results in a complete miscarriage of justice.' *Id.* at 185, 99 S.Ct. at 2240 (quoting *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). Essig claims that the sentencing court erred in computing the base level of his sentence by failing to take into account his alleged ultimate intentions to use the firearm for sport or collection purposes; but he, however, never drew this to the attention of the court during sentencing. While we recognize that the sentencing of a defendant based on material misinformation raises an error of constitutional dimension, *see Townsend v. Burke*, 334 U.S. 736, 740–41, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948), we will not here decide whether the sentencing court's failure to use a base level neither party suggested at the time of sentencing meets the criteria for § 2255, because we believe the objection has been waived.

10 F.3d 968, 977, fn. 25.

*Essig* is controlling. Porter has failed to allege any "objective factor external to the defense" that prevented him from advising his counsel that he desired to challenge the amount of drugs that he agreed to purchase from Agent Poiroux, or prevented him from reading the submissions of trial counsel, or barred him from raising the issue before the district court or the Court of Appeals. Since his trial counsel was presumably effective, and defendant does not contend otherwise, we hold that William Porter has failed to satisfy *Frady's* cause and prejudice standard, and that collateral relief must be denied.

■ Defendant next contends that the criminal history category was improperly calculated at the time of sentencing because the district court mistakenly believed that it had no authority to depart downward under Section 4A1.3 of the Sentencing Guidelines. Defendant relies on the rule that, while the failure to depart downward is not appealable, an appealable issue is created when a district court "mistakenly concludes as a matter of law that it lacks the legal authority to grant a downward departure," citing *United States v. Ritchey,* 949 F.2d 61, 63 (2d Cir.1991). The rule has been adopted in the Third Circuit as well. *United States v. Denardi,* 892 F.2d 269, 271–272 (3d Cir.1989).

The government points out, correctly we believe, that the issue was never presented to the district court. The issue before the court was whether the conviction for driving under the influence of alcohol, which occurred in the Court of Common Pleas of Allegheny County on October 31, 1990, should be included as part of the criminal history pursuant to Section 4A1.2 of the Guidelines. The court concluded that the state court conviction was properly includable despite the fact that the offense and conviction had occurred subsequent to arrest and prior to sentencing in the instant case.

The issue of a downward departure was never presented to the district court. Rather, defendant argued in his position paper and at the time of sentencing that the criminal history was overstated for a discrete reason.

The defendant contends that simply because of the timing, i.e., the dates of the sentencing that he receives a two point assessment. The Court is well aware that the *arrest* in the aforementioned DWI case, post dated the instant indictment and was the result of a Court Order for the arrest of the defendant on a Bond forfeiture. He was found driving drunk on June 12, 1990. The defendant feels it is unfair to use this as, had this sentence been postponed, he would be standing before this Court with a zero prior record.

Position of Defendant with Respect to Sentencing Factors, ¶ 8.D, Appendix at 57 (Emphasis in original). The only issue that was presented was properly resolved and; if defendant desired to argue for a downward departure *after* inclusion of the DWI conviction, it was defendant's responsibility to bring the issue to the attention of the trial court. We hold that the record does not support the contention that the district court believed that a downward departure was legally impermissible.[4]

*Frady* and *Essig* are controlling. Defendant has advanced no reason for his failure to raise the issue in this court and on appeal and, absent a claim of ineffective assistance of counsel, the findings of the district court cannot be attacked in a collateral proceeding. Defendant's contention is barred by the procedural waiver rule.

■ Assuming for the sake of argument that defendant had satisfied the "cause" prong of the *Frady* standard, defendant would not be entitled to relief because he has suffered no prejudice. The criminal history category of II does not significantly overrepresent the seriousness of defendant's criminal history or the likelihood that defendant would commit further crimes.

Defendant was indicted on April 18, 1990 and released on bond by the magistrate judge. On June 12, 1990, defendant was arrested by the local police for driving under the influence of alcohol. A loaded revolver was found in the car along with approximately $4,460 in cash in defendant's jacket pockets.[5] The government presented credible evidence at the sentencing hearing that a female companion, who was present at the arrest, had refused to testify against defendant, and that defendant had robbed a number of barbotte players at gunpoint in an after hours club in the City of Pittsburgh

---

4. The fact that defendant did not raise the issue in his brief on appeal confirms our conclusion that the issue was never raised in the district court.

5. Transcript of hearing of June 13, 1990 at 36–37.

immediately prior to his arrest. Appendix at 29–32.

The presentence report also reveals that defendant has been arrested on five previous occasions and convicted of three offenses. One event involved pointing a rifle at a woman and placing her in fear of imminent bodily injury. These events are distinct, of course, from the racketeering and other bad acts of defendant that were described at trial. We find that the criminal history category of II does not significantly over-represent the seriousness of defendant's criminal history or minimize the likelihood that he will commit future crimes.

In summary, we hold that (1) there was no violation of Fed.R.Crim.P. 32 because defendant read the presentence report and the presentence report contains the specific facts on which the trial court based the judgment of sentence; (2) the fact that defendant did not read the addendum to the presentence report for whatever reason is neither material nor prejudicial; (3) defendant has failed to satisfy the cause and actual prejudice standard of *United States v. Frady, supra;* (4) there are no omissions of record that worked to the actual and substantial disadvantage of William Porter, or infected his entire trial or sentencing with error of constitutional dimensions; (5) the failure of defendant to raise the instant contentions at sentencing or on direct appeal is foreclosed by the procedural default rule of *United States v. Essig, supra;* (6) defendant's objections have been waived; and (7) the criminal history category of II does not over-represent the seriousness of defendant's criminal history.

Defendant's motion will be denied in an appropriate order to follow.