**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Michael J. McKINLEY, Defendant–Appellant.**

No. 93–1547.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 29, 1993.

Decided April 27, 1994.

Mark D. Stuaan, Asst. U.S. Atty. (argued), Sharon McConaha Jackson, Office of the U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Howard N. Bernstein (argued), Indianapolis, IN, for defendant-appellant.

Before BAUER and FLAUM, Circuit Judges, and ROSZKOWSKI, District Judge.*

BAUER, Circuit Judge.

Michael J. McKinley was convicted in the district court of two counts of violating 18 U.S.C. § 922(g) as a convicted felon in possession of a firearm and ammunition. He appeals various aspects of his conviction. We affirm.

## I. Facts

McKinley is a two-time loser in Indiana; he was convicted of armed robbery in 1968 and 1976 (McKinley committed the latter after escaping from the penitentiary in which he was confined). He was paroled in 1986, but violated the terms of his parole and was returned to prison. McKinley was paroled again in 1989 and was still on parole in 1992, despite the filing of yet another parole violation.

The events that led to McKinley's federal conviction occurred on January 20 and 21, 1992 in Indianapolis, Indiana. McKinley was apparently angry with Wanda Patterson because she had spurned his romantic advances. During the afternoon of January 20, Patterson's son Antonio noticed McKinley driving a small blue car with paper tags by the Patterson home. Later that afternoon, Patterson heard what she believed to be firecrackers exploding. She soon discovered that she was wrong; McKinley called Patterson and informed her that he had just fired gunshots at her and her family.

About 8:00 p.m. that evening, Patterson saw McKinley driving slowly by her house in a small blue car with paper tags. As she walked from her kitchen into her living room, a shot was fired into the living room. Patterson then called the police.

Later that evening, Patterson again saw McKinley slowly drive by her house in the blue car. As she was on the telephone with the police, several more shots were fired into her house. A police officer responded to

* The Honorable Stanley J. Roszkowski, United States District Judge for the Northern District of Illinois, is sitting by designation.

Patterson's call and began to follow the blue car. The officer lost the trail, but shortly thereafter found the blue car abandoned. The officer found .22 caliber ammunition in the car, which matched a bullet recovered from Patterson's house.

For these incidents, McKinley pled guilty in an Indiana state court to criminal recklessness. Prior to the entry of his guilty plea, McKinley was informed of a federal detainer filed against him. On June 24, 1992, a federal grand jury indicted McKinley on two counts for being a convicted felon in possession of a firearm and ammunition. On November 17, 1992, a jury found McKinley guilty of both counts.

## II. Analysis

On appeal, McKinley complains of several aspects of his prosecution and subsequent conviction. He claims that because Indiana law does not prohibit him from possessing a shotgun, he is not subject to prosecution under 18 U.S.C. § 922(g). Further, McKinley claims that his right to a speedy trial and right against double jeopardy have been violated. Finally, he claims that he suffered a constitutional violation because of ineffective assistance of his counsel. McKinley's arguments are without merit, and we dispose of them serially.

■ Among other things, section 922(g) forbids those convicted of a crime punishable by imprisonment for a term exceeding one year from possessing firearms or ammunition. Section 921(a)(20) of the statute states:

What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

McKinley does not argue that he was not convicted of such a crime (his convictions for armed robbery meet this requirement quite nicely); nor does he argue that he has been pardoned or that his conviction has been expunged. Rather, he claims that an Indiana statute restoring the right to vote to convicted felons who have served their time has operated to restore his civil rights according to § 921(a)(20). See IND.CODE § 3-7-1-15. Our cases indicate that absent a pardon or expunction, a state must enact a general statute substantially restoring a convicted felon's civil rights in order to exempt him from prosecution under § 922(g). See United States v. Wagner, 976 F.2d 354 (7th Cir. 1992); Roehl v. United States, 977 F.2d 375 (7th Cir.1992); United States v. Erwin, 902 F.2d 510 (7th Cir.1990). Indiana has no such statute. See Wagner, 976 F.2d at 355 (comparing Indiana law to Wisconsin law). Even if a state's laws may be interpreted to restore piecemeal a convicted felon's civil rights, Indiana's statutory framework does not operate to accomplish this result.

To satisfy § 921(a)(20), other circuits have determined that the restoration of civil rights must include the rights to vote, hold public office, and serve on a jury. United States v. Thomas, 991 F.2d 206, 214 (5th Cir.), cert. denied, —— U.S. ——, 114 S.Ct. 607, 126 L.Ed.2d 572 (1993); United States v. Driscoll, 970 F.2d 1472, 1476 (6th Cir.1992), cert. denied, —— U.S. ——, 113 S.Ct. 1056, 122 L.Ed.2d 362 (1993); United States v. Dahms, 938 F.2d 131, 133 (9th Cir.1991). Further, they hold that the restoration of these rights must be more than de minimus; the restoration must be substantial. Driscoll, 970 F.2d at 1476; Dahms, 938 F.2d at 133. Convicted felons in Indiana do not receive the substantial restoration of the aforementioned civil rights.

■ McKinley is quite correct in his assessment of section 3-7-1-15 of the Indiana Code. Any person in Indiana who is not incarcerated may vote, even if that person is on parole. Indiana, however, prohibits a convicted felon from holding an elective office. IND.CODE § 3-8-1-5. It also holds a person under a sentence ineligible for jury service. IND.CODE § 33-4-5-7. In addition,

a felony conviction counts for the purposes of Indiana's recidivist laws unless the conviction has been set aside or the felon has been pardoned. IND.CODE §§ 35–50–2–7.1(b), 35–50–2–8(b). Indiana clearly does not substantially restore a convicted felon's civil rights; thus, McKinley is a convicted felon in Indiana's eyes and is eligible for prosecution pursuant to 18 U.S.C. § 922(g).

■ Even if McKinley's civil rights were substantially restored, he would still lose. McKinley could not prove that his particular civil right to carry a gun had been restored. "When viewed as a whole, it is apparent that Indiana law seeks to keep guns out of the hands of convicted felons." *Wagner,* 976 F.2d at 356 (detailing the litany of Indiana statutes restricting the rights of felons with respect to firearms). Moreover, McKinley's conditional parole agreement specifically prohibits McKinley from "carrying, dealing in, or possessing firearms." The State of Indiana told McKinley "point blank that weapons are not kosher." *See Erwin,* 902 F.2d at 513. McKinley's argument that he has a right to carry a firearm in Indiana fails.

McKinley raises for the first time an argument that he was prejudiced by violations of the Speedy Trial Act; we conclude there were no violations of the Act in his case. A criminal trial must commence within seventy days of the latter of either the return of an indictment or a defendant's first appearance on the indictment. 18 U.S.C. § 3161(c)(1). Certain time periods are excluded from this seventy day period, including delay resulting from the filing, consideration, and disposition of pretrial motions and, under certain circumstances, motions for continuance by either party. 18 U.S.C. § 3161(h)(8).

■ Because McKinley did not raise this issue below, we review it for plain error. *United States v. Tanner,* 941 F.2d 574, 579 (7th Cir.1991). McKinley first appeared on the indictment on June 25, 1992, and the district court set the trial for August 26, 1992. McKinley and the government each filed a separate motion for continuance; the district court granted both motions, and the trial ultimately began on November 16, 1992. The district court properly excluded the period from August 26 through November 16 for purposes of the Speedy Trial Act. Thus, for purposes of the Act, McKinley's trial commenced fifty-four days after he first appeared on the indictment.

Still, McKinley complains that the speedy trial clock should have started ticking from the moment the government filed its detainer against him. This argument flies directly in the face of the statutory dictates. The government filed a detainer against McKinley and proceeded to indict him as soon as they received custody of him. The clock began to tick when he made his first appearance on the indictment. This is precisely the procedure outlined by the statute, and McKinley offers no authority in support of his argument. We believe, then, that McKinley received a trial as speedy as required, and that the district court did not commit error plain or otherwise in administering McKinley's trial with respect to the Speedy Trial Act.

Next, McKinley argues that his federal prosecution based on a prior conviction in state court violates the double jeopardy clause of the Fifth Amendment. Essentially, he claims that he was prejudiced because he pled guilty in state court without knowing that a federal prosecution against him was underway. Neither the facts nor legal precedent support his position.

■ The double jeopardy clause of the Fifth Amendment is intended to protect the accused from multiple prosecutions for the same crime. It bars successive prosecutions "only if two offenses for which the defendant is prosecuted are the 'same.'" *Heath v. Alabama,* 474 U.S. 82, 87, 106 S.Ct. 433, 437, 88 L.Ed.2d 387 (1985). The Supreme Court "has plainly and repeatedly stated that two identical offenses are not the 'same offence' within the meaning of the double jeopardy clause if they are prosecuted by different sovereigns." *Id.* at 92, 106 S.Ct. at 439. There is no question that the states and the federal government are separate sovereigns. Thus, dual prosecutions in state and federal courts do not violate the double jeopardy clause. *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959); *Westfall v. United States,* 274 U.S. 256, 47 S.Ct. 629, 71 L.Ed. 1036 (1927); *United*

*States v. Jordan,* 870 F.2d 1310 (7th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 101, 107 L.Ed.2d 65 (1989); *United States v. Jones,* 808 F.2d 561 (7th Cir.1986), *cert. denied sub nom., Humphrey v. United States,* 481 U.S. 1006, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987).

■ McKinley acknowledges the "dual sovereignty doctrine," but argues that the government's conduct in his case justifies an exception to the general rule. He claims that he knew nothing of the federal detainer filed against him; this, he says, caused his guilty plea, which formed the cornerstone of the federal prosecution. This argument is unavailing.

We held in *Jordan,* 870 F.2d at 1313, that a defendant's ignorance of a possible federal prosecution does not implicate the double jeopardy clause. Further, there is evidence in this case, in the form of testimony offered by McKinley's state court public defender, his religious counsellor, and the prosecuting state's attorney, that McKinley was informed of the federal detainer; if he knew of the impending prosecution, he cannot claim he was duped into pleading guilty in state court. There is simply no double jeopardy violation here.

Finally, McKinley claims that errors made by his trial counsel render his assistance constitutionally ineffective. Specifically, these errors include his counsel's failure to file: 1) a pre-trial motion to suppress the state guilty plea; 2) a motion to dismiss the district court charges as being a violation of his Fifth Amendment double jeopardy right; and 3) a motion for discharge under the Speedy Trial Act. These claims are without merit.

■ The Sixth Amendment guarantees a criminal defendant the right to the effective assistance of counsel. To prevail on such a claim, the defendant must show that 1) counsel's representation fell below an objective standard of reasonableness, and 2) but for the deficiencies, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2065, 2068, 80 L.Ed.2d 674 (1984); *Coogan v. McCaughtry,* 958 F.2d 793, 798 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct.

495, 121 L.Ed.2d 433 (1992). In reviewing a claim of ineffective assistance of counsel, we are highly deferential to trial counsel's performance and find ineffectiveness only when the defendant can overcome the presumption that the challenged action or inaction could not fall within the broad range of sound trial strategy. *Cuppett v. Duckworth,* 8 F.3d 1132, 1135–36 (7th Cir.1993). McKinley cannot overcome this presumption.

■ We have already rejected McKinley's speedy trial and Fifth Amendment claims; thus, his trial counsel did not commit error in failing to file motions relevant to these claims. In addition, McKinley offers no explanation for his contention that his state conviction should have been suppressed. If it is based on the double jeopardy clause, we have already rejected that argument. If there is some other reason, we are not aware of it. This claim fails because McKinley has failed to demonstrate how counsel's representation fell below the objective standard of reasonableness. McKinley has only himself to blame for his conviction and lengthy sentence.

### III. Conclusion

For the foregoing reasons, McKinley's conviction by the district court is

AFFIRMED.