James McGRATH, Petitioner–Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 1371, Docket 94–2011.

United States Court of Appeals,
Second Circuit.

Argued April 27, 1995.

Decided Aug. 1, 1995.

Cynthia Feathers, Saratoga, NY, for petitioner-appellant.

Gregory L. Waples, Asst. U.S. Atty., Burlington, VT (Charles R. Tetzlaff and David V. Kirby, on the brief), for respondent-appellee.

Before: OAKES, McLAUGHLIN, and LEVAL, Circuit Judges.

LEVAL, Circuit Judge:

This case presents an issue of first impression in this circuit: Whether a person convicted of a felony but never stripped of his civil rights under state law is thereafter subject to prosecution under 18 U.S.C. § 922(g)(1) as a felon in possession of a firearm. James McGrath appeals the dismissal of his habeas corpus petition by the District Court for the District of Vermont (Fred I. Parker, *Chief Judge*), in which he sought reversal of his conviction. McGrath argues that he was wrongfully prosecuted as a "felon in possession" because he falls within a separately codified exemption for convicted persons who have had their civil rights "restored." We disagree and affirm the dismissal of his petition.

*Background*

In 1961, McGrath was convicted in Vermont state court of larceny, a crime classified as a felony in that state. He was not sentenced to jail time, but was given a suspended sentence of three to five years imprisonment and placed on probation. Under Vermont law, one so convicted who is not sentenced to jail does not forfeit civil rights.

Some thirty years later, in 1992, McGrath was charged with, and pleaded guilty to, possession of a semi-automatic weapon in

violation of 18 U.S.C. § 922(g)(1), the federal law that criminalizes firearms possession by convicted felons. At the sentencing hearing, the government proved his 1961 felony conviction as the predicate offense.[1] The district court sentenced McGrath to 15 months of imprisonment and two years of supervised release.

McGrath did not appeal. Two months into his sentence, however, he filed a *pro se* habeas corpus petition under 28 U.S.C. § 2255 to vacate his conviction, asserting that because Vermont law had not stripped him of any civil rights as a result of his 1961 conviction, he was not a person prohibited from carrying firearms under the federal statute. He claimed in an amended petition that his failure to raise this claim at his plea, sentencing, or on direct appeal should be excused because he received ineffective assistance of counsel.

The district court dismissed McGrath's petition. It adopted the conclusion of Magistrate Judge Jerome Niedermeier that McGrath's argument for exemption from § 922(g)(1) was meritless, and that his counsel's failure to raise it was therefore not prejudicial. When this case initially came before us on appeal, we granted McGrath's request for appointment of counsel. The case was rebriefed and heard on oral argument.

### Discussion

■ The first question we face is whether we may consider on McGrath's habeas petition a question that he did not raise at any time in the criminal proceeding against which the habeas is directed. Ordinarily we will not review claims in a habeas petition that were not raised in the original proceeding, absent a showing of cause for the default and prejudice therefrom. *Billy–Eko v. United States*, 8 F.3d 111, 113–14 (2d Cir.1993); *Campino v. United States*, 968 F.2d 187, 190 (2d Cir.1992). McGrath argues he should not be deemed to have forfeited the claim as his failure to raise it was due to ineffective coun-

sel. *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986) (ineffective assistance of counsel constitutes cause for default in habeas proceeding). We therefore need to consider the merits of his claim in order to decide whether McGrath's lawyer was unreasonably deficient in failing to raise it. *Strickland v. Washington*, 466 U.S. 668, 687, 691, 104 S.Ct. 2052, 2066–67, 80 L.Ed.2d 674 (1984) (defendant claiming ineffective counsel must show that attorney performance fell below objective standard of reasonableness and that deficiencies prejudiced the outcome).

Whether McGrath's 1961 conviction constitutes a qualifying predicate offense under the federal firearms statute is a question of pure statutory construction, which we review *de novo*. *United States v. LaPorta*, 46 F.3d 152, 156 (2d Cir.1994).

■ McGrath was charged with violating Section 922(g)(1) of the criminal code. 18 U.S.C. § 922(g)(1). This statute, passed as part of the Gun Control Act of 1968, Pub.L. No. 90–618, 82 Stat. 1213, criminalizes the shipping, transport or possession of a firearm connected with interstate commerce by any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Eighteen years later, in 1986, Congress passed an amendment which exempted from prosecution felons who, under the law of the jurisdiction of their predicate conviction, had received a pardon, expungement, or restoration of civil rights. 18 U.S.C. § 921(a)(20) ("Firearms Owners' Protection Act") ("FOPA"). This subsection provides:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or *has had civil rights restored* shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

---

1. It also adduced evidence that, in addition to possessing several pistols and semi-automatic weapons, McGrath tried to recruit an informant to obtain a high-powered rifle to shoot a Ver-

mont town official with whom he was embroiled in a zoning dispute, and solicited another person to commit arson.

*Id.* (emphasis added). McGrath argues that the exemption for felons who have "had civil rights restored" should extend to felons whose civil rights were never taken away.

The parties agree that the pertinent civil rights in question are those which most states extend by virtue of citizenship within their borders: (i) the right to vote; (ii) the right to hold elective office; and (iii) the right to sit on a jury. *See, e.g., United States v. Cassidy,* 899 F.2d 543, 549 (6th Cir.1990). The parties also agree that under Vermont law felons who were convicted but never incarcerated do not suffer the suspension of any of these rights.[2] Nor does Vermont law forbid such felons from possessing firearms. McGrath, therefore, never suffered a deprivation of civil rights by reason of his predicate felony conviction.

McGrath argues that to have not suffered loss of civil rights upon conviction is the functional equivalent of having had civil rights "restored" for purposes of the exemption granted by § 921(a)(20). The argument is unavailing. The word "restore" means "to give back (as something lost or taken away)." *Webster's Third New International Dictionary* 1936 (1976). The "restoration" of a thing never lost or diminished is a definitional impossibility. McGrath simply does not come within the terms of the statute.

McGrath makes several arguments of varying persuasiveness to escape the plain language of the statute. He first argues that it is anomalous for the federal government to treat those who never lost their civil rights more harshly than those who temporarily did so. As long as both classes of felons share the operative status of full citizenship, he contends, the government should treat them similarly in applying the federal gun possession statute. This argument has some appeal. But it ignores the apparent intention of the 1986 amendment. Prior to its passage, the felon-in-possession statute applied to all convicted felons, regardless whether the predicate conviction entailed deprivation of civil rights. Thus, from the first, the Gun Control Act failed to distinguish between those whose felony convictions resulted in loss of civil rights, and those who retained those rights notwithstanding the conviction. The FOPA amendment then exempted felons to whom the convicting jurisdiction extended a subsequent gesture of forgiveness, or partial forgiveness, by means of pardon, expungement, or restoration of civil rights. The theory was no doubt that such a subsequent forgiveness should be credited as an acknowledgement of rehabilitation or an affirmative gesture of goodwill that merited exemption from the firearms bar.

We agree substantially with the analysis of the First Circuit, the only court of appeals to have confronted this precise question. In *United States v. Ramos,* 961 F.2d 1003 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 364, 121 L.Ed.2d 277 (1992), the defendant's predicate offenses did not cause him to forfeit any civil rights under Massachusetts law. At the time of these convictions, Ramos possessed a Massachusetts firearms license, and continued to do so thereafter in full accord with state law. Ramos argued, as does McGrath, that the retention of his civil rights precluded his prosecution for firearms possession under § 921(a)(20). The panel disagreed, finding as we do that the ordinary meaning of "restore" could not encompass a person whose rights were never disabled. *Id.* at 1008.

*Ramos* addressed the anomaly of distinguishing between persons enjoying the same civil status in part by reasoning that Congress must have wished to exempt from FOPA only those exceptional individuals whom a state has *individually* and *affirmatively* deemed worthy of entrustment with civil rights:

> By the *affirmative act* of pardon, expungement or restoration, the state has declared its renewed trust in that person. This rationale does not apply with equal force, however, where the legislature of the state has simply failed to provide that those found guilty of misdemeanors will lose any civil rights as a collateral consequence of their convictions. *There is no individualized official judgment,* as in a pardon or

2. *See* Vt.Stat.Ann. tit. 12, § 64 (1994) (disqualifying from jury service all persons who have *served* a term of imprisonment upon felony conviction); Vt.Stat.Ann. tit. 28, § 807 (1994) (providing that felons retain the right to vote while incarcerated). Vermont law provides no bar to a felon's election to public office or possession of firearms.

expungement, that the particular person in question has demonstrated some reason to be singled out from Congress's overall judgment that persons convicted of serious crimes not be allowed to carry weapons. *Id.* at 1009 (emphasis added).

A majority of circuits has disagreed with the First Circuit's suggestion that a restoration of civil rights must involve an individualized judgment to trigger the FOPA exemption. For instance, the Sixth Circuit has stated that a certificate of restoration issued routinely to all released prisoners satisfies § 921(a)(20), *see Cassidy,* 899 F.2d at 550 & n. 14; the Fourth and Ninth Circuits have ruled similarly with respect to general laws that automatically restore rights to entire classes of felons, *see United States v. Essick,* 935 F.2d 28, 30–31 (4th Cir.1991) (automatic restoration under North Carolina law suffices); *United States v. Dahms,* 938 F.2d 131, 133–34 (9th Cir.1991) (separate restorative statutes function as a general restoration law and satisfy § 921(a)(20)); *United States v. Gomez,* 911 F.2d 219, 221 (9th Cir.1990) (general restorative Idaho law). *See also United States v. Hall,* 20 F.3d 1066, 1068–69 (10th Cir.1994) (rejecting *Ramos'* view that state action must be individualized); *United States v. Glaser,* 14 F.3d 1213, 1218 (7th Cir.1994) (noting that restoration of civil rights is almost always effected in generic fashion rather than on a case-by-case basis); *United States v. Thomas,* 991 F.2d 206, 212–13 (5th Cir.) (disagreeing that restoration must be individualized), *cert. denied,* —— U.S. ——, 114 S.Ct. 607, 126 L.Ed.2d 572 (1993).

We agree with these circuits that a pardon, expungement, setting aside of the conviction, or restoration of civil rights will trigger the exemption, regardless whether the act of grace is based on individualized consideration. *See Glaser,* 14 F.3d at 1218 (noting executive pardons of Vietnam war protesters by President Carter and Sedition Act convicts by President Jefferson). However, we do agree with the First Circuit's conclusion that a subsequent change of status is required to "restore" civil rights within the meaning of the statute. *Ramos,* 961 F.2d at 1008.

Vermont's failure to divest non-incarcerated felons of such rights does not qualify as a restoration under this statute. *Cf. Thomas,* 991 F.2d at 215 (refusing to treat a state's non-prohibition of firearms possession as a "restoration" of rights under FOPA). Congress might have decided to exempt also those whose civil rights were never forfeited under state law. But it did not do so.

McGrath complains that our interpretation of the statute produces disparate results, depending on the structure of the state provision governing restoration. As the cases from various circuits cited above illustrate, many states restore civil rights to convicted felons by means of a general law stating that all rights shall be reinstated upon the service of sentence. *See, e.g.,* Colo. Const. art. VII, § 10. Other states authorize prison officials to issue a certificate of restoration to some or all felons after a period certain following the expiration of a prison sentence or parole. *See, e.g.,* Ohio Rev.Code Ann. §§ 2961.01, 2967.16 (Baldwin 1995). A minority of states restore rights in piecemeal fashion: one provision in the state code may disable a felon's right to vote while incarcerated, while separate provisions suspend the right to hold office and to serve on a jury during imprisonment. *See, e.g.,* Mich.Comp.Laws Ann. §§ 168.758b, 168.938, 600.1307a (West 1994). Finally, at least twelve states—including Vermont—appear to have no provisions whatsoever for the restoration of civil rights. *See Beecham v. United States,* —— U.S. ——, ——, 114 S.Ct. 1669, 1672, 128 L.Ed.2d 383 (1994) (citing Arkansas, Indiana, Kentucky, Maryland, Missouri, New Jersey, Oklahoma, Pennsylvania, Rhode Island, Texas, Vermont, and Virginia as having no procedure for restoring civil rights).

This effectively means that persons residing in certain states will be substantially more vulnerable to federal prosecution. McGrath points out that, under our reading of the statute, no Vermont felon—even those incarcerated for their crimes—will ever qualify for the § 921(a)(20) exemption. This is so because voting and elective office rights are never forfeited by felons convicted there, while jury rights can never be restored if lost. McGrath argues that Congress could not possibly have intended exposure to federal prosecution to depend on such caprices of legislative structure.

But it appears that this effect—if not this precise result—was exactly what Congress

did intend. The exemption at issue was passed in 1986 in response to a 1983 Supreme Court decision which held that the definition of a predicate offense under the Gun Control Act of 1968 was a matter of federal, not state law. *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 111–12, 103 S.Ct. 986, 991–92, 74 L.Ed.2d 845 (1983). *Dickerson* held that a state's expungement of a conviction did not nullify the conviction for the purpose of applying the federal firearms statute. Section 921(a)(20) was expressly crafted to overrule *Dickerson*'s federalization of a felon's status by allowing state law to define which crimes constitute a predicate offense under the statute, and thereby to determine which convicted persons should be subject to or exempt from federal prosecution for firearms possession. *See United States v. Jones,* 993 F.2d 1131, 1135 (4th Cir.1993), *aff'd sub nom. Beecham v. United States,* —— U.S. ——, ——, 114 S.Ct. 1669, 1672, 128 L.Ed.2d 383 (1994). Calling its new legislation the "Firearms Owners' Protection Act," Congress sought to accommodate a state's judgment that a particular person or class of persons is, despite a prior conviction, sufficiently trustworthy to possess firearms.

The very decision to have restoration triggered by events governed by state law insured anomalous results. The several states have considerably different laws governing pardon, expungement, and forfeiture and restoration of civil rights. Furthermore, states have drastically different policies as to when and under what circumstances such discretionary acts of grace should be extended. The anomaly McGrath complains of is but one of innumerable anomalies that § 921(a)(20) will produce. They are the inevitable consequence of making access to the exemption depend on the differing laws and policies of the several states.

We are sympathetic to the potential for injustice created by the restoration language of § 921(a)(20). Several circuit opinions have criticized in dicta the result that persons convicted of serious crimes who temporarily lost their civil rights are immune from prosecution for gun possession, while those convicted of lesser offenses—crimes that did not justify stripping them of civil rights—remain subject to prosecution as felons-in-posses-

sion. *See Hall,* 20 F.3d at 1069; *Thomas,* 991 F.2d at 212 (eschewing this result as a "Wonderland"); *see also Ramos,* 961 F.2d at 1011 (Torruella, J., dissenting) (majority's approach contravenes congressional intent to place firearms out of the reach of the most dangerous classes of felons). Perhaps, if Congress were to reconsider the problem, it might also exempt felons who never forfeited their civil rights. But the revision suggested by McGrath would not improve matters. While correcting one anomaly, it would create another. Under his proposal, the most dangerous felons in a state that elected not to forfeit civil rights would be exempted from the federal prohibition, while those convicted of far less serious crimes in other states would not be exempted unless they were lucky enough to receive the benefits of an act of grace. Furthermore, such an interpretation would undercut the basic federal policy of keeping firearms out of the hands of convicted felons. In any event, the role of the court is to give effect to the legislation Congress has passed, not to legislation it might pass if it further studied the question. *Beecham,* —— U.S. at ——, 114 S.Ct. at 1672 ("[O]ur task is not ... one of ascertaining what [Congress] would have decided had [it] reconvened to consider petitioners' particular case.").

As the government concedes, the FOPA scheme is not perfect. Congress superimposed a patchwork of state law over a broad piece of federal legislation in a manner bound to produce anomalous results. *See* 132 Cong. Rec. 28488 (Oct. 3, 1986) (statement of Sen. Durenberger urging delay in effective date so as to allow states to reexamine their provisions for civil rights restoration and firearms possession). The scheme is nonetheless a rational one, notwithstanding its imperfections. *Cf. Chapman v. United States,* 500 U.S. 453, 465–68, 111 S.Ct. 1919, 1927–29, 114 L.Ed.2d 524 (1991) (LSD statute is rational despite potential for wide sentencing disparities). Furthermore, the statute provides a mechanism for relief; *convicted felons may apply to the Secretary of the Treasury for a certificate of non-disability.* 18 U.S.C. § 925(c). Failing that, unless Congress elects to amend the statute to include persons "retaining" civil rights, or Vermont modifies its approach to adopt a forfeiture

and restoration regimen, we must, under the clear terms of the statute, deny exemption to convicted felons like McGrath whose civil rights were neither revoked nor restored.

We conclude that McGrath's contention has no substantial merit and that, consequently, his attorney was not derelict in failing to raise it on direct appeal. Accordingly, McGrath cannot raise this issue by writ of habeas corpus, *Campino v. United States*, 968 F.2d 187, 190 (2d Cir.1992); were he able to raise it, it would equally warrant dismissal of his petition.

### Conclusion

The dismissal of McGrath's petition is affirmed.