USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 95-1907 UNITED STATES OF AMERICA, Appellee, v. MICHAEL INDELICATO, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Patti B. Saris, U.S. District Judge] ___________________ ____________________ Before Boudin, Circuit Judge. _____________ Aldrich, Senior Circuit Judge, ____________________ and Lynch, Circuit Judge. _____________ ____________________ James L. Sultan, by Appointment of the Court, with whom Rankin & _______________ _________ Sultan was on briefs for appellant. ______ Paula J. DeGiacomo, Assistant United States Attorney, with whom ___________________ Donald K. Stern, United States Attorney, was on brief for the United _______________ States. ____________________ October 15, 1996 ____________________ BOUDIN, Circuit Judge. In the district court Michael ______________ Indelicato pled guilty to various charges of possession and distribution of cocaine, conspiracy to distribute cocaine, wire fraud, and conspiracy to defraud the United States. 18 U.S.C. 371, 1343; 21 U.S.C. 841(a)(1), 846, 853. He was tried on four related charges of possessing firearms and ammunition, having previously been convicted of a crime punishable by more than one year in prison. 18 U.S.C.  922(g)(1). In a jury-waived trial on stipulated facts, the district court found Indelicato guilty on those counts as well. United States v. Indelicato, 887 F. Supp. 23 (D. Mass. _____________ __________ 1995). Indelicato now appeals from these firearms possession convictions and from his sentence on the drug counts. I. The background facts are easily summarized. In 1993, Indelicato pled guilty in Massachusetts state court to assault and battery with a knife and carrying a dangerous weapon (the knife). Mass. Gen. Laws ch. 265, 13A; ch. 269, 10(b). The state court ultimately sentenced him to a one- year suspended sentence and $7,500 in restitution, which Indelicato paid. Both offenses are misdemeanors under state law but punishable by a maximum of two and one-half years in prison. On May 7, 1994, federal agents arrested Indelicato. The agents searched his home and place of business and found four -2- -2- firearms (including an Uzi semiautomatic weapon) and numerous forms of ammunition. The ensuing indictment charged Indelicato, among other offenses, with violating 18 U.S.C. 922(g)(1), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition . . . ."1 Indelicato stipulated that the interstate commerce requirement was satisfied. However, 18 U.S.C. 921(a)(20) excludes from this category "[a]ny conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored . . . unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." At trial, Indelicato argued that this exclusion applied to him because Massachusetts never took away his civil rights and because he suffered no restrictions on his state firearms privileges. The district court rejected Indelicato's argument, quite properly relying upon United States v. Ramos, 961 F.2d 1003, _____________ _____  ____________________ 118 U.S.C. 921(a)(20)(B) excludes from this category persons convicted of state misdemeanors punishable by a term of imprisonment of two years or less. Because his state crimes carried a larger maximum sentence, Indelicato did not fall within this exception. -3- -3- 1007-10 (1st Cir.), cert. denied, 506 U.S. 934 (1992), which ____________ held that rights never taken away cannot have been "restored." Long after the district court sentenced Indelicato, this court (in February 1996) sitting en banc _______ announced its decision in United States v. Caron, 77 F.3d 1, _____________ _____ 5-6 (1st Cir.) (en banc), cert. denied, 116 S. Ct. 2569 ________ _____________ (1996), which overruled Ramos on a different issue and _____ explicitly reserved judgment on whether civil rights never taken away could be "restored." At Indelicato's sentencing in July 1995, the district court imposed concurrent terms of 168 months imprisonment on the cocaine counts (based primarily on the weight of the drugs), 120 months on the firearms possession counts, and 60 months on the fraud counts, as well as supervised release, fines, assessments and forfeitures. II. Our principal concern on this appeal is with the firearms possession counts, which present an issue of law that we review de novo. As originally enacted in 1968, 18 ________ U.S.C. 922(g)(1) made criminal gun possession by anyone previously convicted of a crime (the predicate offense) punishable by more than one year of imprisonment, but the statute allowed an exception for state misdemeanors punishable by two years or less of imprisonment. 18 U.S.C.  921(a)(20). In 1983, the Supreme Court held that a predicate -4- -4- offense under section 922(g) is defined by federal law, and that state expunctions of state convictions did not avoid the ban of section 922(g)(1). Dickerson v. New Banner Institute, _________ _____________________ Inc., 460 U.S. 103, 111-12, 115 (1983). ____ Congress reacted to Dickerson and like rulings by _________ enacting in 1986 the Firearms Owners' Protection Act, 100 Stat. 449, which in pertinent part amended section 921(a)(20)'s definition of predicate offenses. The amendment, which remains in effect today, provides that state law defines what constitutes a predicate "conviction" for purposes of section 922(g)(1) and other provisions of the statute. It also excludes convictions that have been "expunged" or "set aside," or for which the person has been "pardoned" or "has had civil rights restored." Congress has provided no definition of "civil rights" or "restored."  The main issue for us is whether the "civil rights restored" provision in section 921(a)(20) protects one who, like Indelicato, never had his civil rights taken away at all. It is common ground that misdemeanants in Massachusetts do not lose the rights that we and most courts describe as "civil rights" under the statute: the rights to vote, to serve on a jury, and to hold public office. Caron, 77 F.3d _____ at 2. But the government argues, based on plain language, that a defendant cannot have "restored" to him what the state never took away.  -5- -5- The issue is difficult because it pits the literal language of the statute against Congress' perceived rationale. Clearly the ordinary reading of the word "restored" supports the government. This court so held in Ramos, 961 F.2d at 1007-08, although over a strong dissent, _____ and the Second Circuit followed Ramos on this issue in _____ McGrath v. United States, 60 F.3d 1005, 1007 (2d Cir. 1995), _______ _____________ cert. denied, 116 S. Ct. 929 (1996). But there are two _____________ different reasons why we are not inclined to treat the literal language as precluding further inquiry, quite apart from the determination of the en banc court in Caron treating _______ _____ the present issue as an open one in this circuit. See Caron, ___ _____ 77 F.3d at 5-6.2 First, a ready explanation exists why Congress might have used the term "restored" without intending to exclude persons like Indelicato. The incidents that gave rise to the amendment (in particular, Dickerson), and what Congress _________ thought to be the ordinary case, involved the deprivation of civil rights and their subsequent restoration (e.g., by ____ pardon). Indeed, there is no indication in the legislative history that Congress gave any attention to the rare case in  ____________________ 2Although we think that Caron frees us to treat the _____ issue as open despite Ramos, we have taken the precaution of _____ circulating this opinion in advance to all of the circuit's active judges. This informal circulation does not preclude a petition for rehearing or suggestion of en banc _________ reconsideration. See Trailer Marine Transport Corp. v. Rivera ___ ______________________________ ______ Vazquez, 977 F.2d 1, 9 n.5 (1st Cir. 1992). _______ -6- -6- which someone convicted of a serious crime would not lose one or more of the three civil rights that have been used by most courts as touchstones under this section. Second, as explained later in this opinion, it is hard to find any reason why Congress would have wished to adopt the distinction now urged by the government. In United ______ States v. Cassidy, 899 F.2d 543, 549 n.13 (6th Cir. 1990), ______ _______ the Sixth Circuit went so far as to say that there was "no rational basis" for distinguishing between a criminal who never lost his civil rights and one who had them taken away and then restored by statute. As the Supreme Court has reminded us, "[l]ooking beyond the naked text for guidance is perfectly proper when the result it apparently decrees is difficult to fathom or where it seems inconsistent with Congress' intention . . . ." Public Citizen v. Department of ______________ _____________ Justice, 491 U.S. 440, 455 (1989). _______ Where language is not conclusive, courts turn to legislative history and purpose. Most broadly, it has been suggested that Congress' main purpose in enacting section 921(a)(20) was to let the states decide who may carry guns. E.g., United States v. Bost, 87 F.3d 1333, 1334 (D.C. ____ _____________ ____ Cir. 1996); Caron, 77 F.3d at 3; Ramos, 961 F.2d at 1011 _____ _____ (Torruella, J., dissenting). If so, it might follow that Massachusetts--having declined to restrict the gun possession -7- -7- rights of misdemeanants like Indelicato--should have its preference followed as a matter of course. This is too sweeping a contention. Congress in 1986 deliberately gave the states much latitude to determine who would fall under the ban of the federal statute; but it did not give the states carte blanche as to the manner of making _____________ this determination. Rather, Congress created a structure that allows the state to make this decision only in mechanically defined ways--such as by expungement or setting aside of a conviction, pardon or restoration of civil rights. For instance, if a state does not restore a felon's civil rights but expressly allows him to possess firearms, the felon may still be prosecuted under the federal statute. United States v. Thomas, 991 F.2d 206, 214-15 (5th Cir.), _____________ ______ cert. denied, 510 U.S. 1014 (1993). ____________ Although Congress did not specify which civil rights it had in mind, the plurality view among the circuits-- explicitly adopted by this court in Caron--is that Congress _____ had in mind the core cluster of "citizen" rights that are typically lost by felons and restored by pardons, namely, the right to vote, to serve on a jury and to hold public office. Caron, 77 F.3d at 2. Indeed, when the Senate debated the _____ amendment, Senator Sasser noted that under the federal statute, convicted felons "lose most civil rights--to vote, -8- -8- hold office, and so on . . . ." 131 Cong. Rec. 18,182 (1985). To key the federal statute to these civil rights makes sense only on one assumption: that Congress thought of the attribution of these rights as expressing "a state's judgment that a particular person or class of persons is, despite a prior conviction, sufficiently trustworthy to possess firearms." McGrath, 60 F.3d at 1009. Accord United States _______ ______ _____________ v. Meeks, 987 F.2d 575, 578 (9th Cir.), cert. denied, 510 _____ ____________ U.S. 919 (1993). This "trustworthiness" rationale is about the best that we or anyone else has managed to explain Congress' approach. The tightest application of this rationale might suggest that Congress intended to allow firearms possession only where a state has made an individualized decision to restore ______________ civil rights as, for example, by an individual pardon. But the statute contains no explicit requirement of individualized action. And this court in Caron, together _____ with most other circuits, see 77 F.3d at 2 n.1, 4, has ___ rejected such a requirement of individualized action. If individualized action is not required, it is hard to see why Congress would wish to distinguish between one whose civil rights were never taken away (Indelicato) and one whose civil rights were mechanically taken away and mechanically restored. The government has supplied no such reason, nor -9- -9- has any court done so. The distinction could certainly create an anomalous result in various situations, such as a jurisdiction that did not deprive a misdemeanant of civil rights but took away the rights of a felon and then restored them by statute on the felon's completion of his prison term and period of supervision. The government's best argument, ad hominem but not ___________ without force, is that Indelicato is a perfect example of the kind of previously convicted criminal who ought to be barred from possessing a firearm. Indelicato had earlier been convicted of an assault with a knife; he was engaged in drug operations; and his collection of weapons and ammunition provided ample reason to think that he was a very dangerous man. Yet because Massachusetts law does not deprive Indelicato of his civil rights, Indelicato can do what a federally convicted forger could not. But the ad hominem argument is somewhat misleading. ___________ Indelicato is already serving a very long federal sentence for the drug offenses; and if civil rights were not deemed to be "restored" to him, neither would they be restored to some other misdemeanant in Massachusetts whose crime might be so pacific that no one would think that it made any sense to deprive him of the opportunity to possess a firearm. See, ____ e.g., Mass. Gen. Laws ch. 56, 50 (alteration of ballots). ____ Congress can fix the flaws in the present statute; we cannot -10- -10- do so without creating other flaws and the possibility of some new injustice. We recognize that our conclusion is contrary to two very able opinions--our own circuit's earlier two-to-one decision on this issue in Ramos and the Second Circuit's decision in _____ McGrath, relying directly upon Ramos. But Ramos' decision on _______ _____ _____ the point at issue drew some of its force from its other holding that Congress had intended restoration to be an individualized decision--a defensible position, but one now rejected by Caron and most other circuits. As for McGrath, _____ _______ it must be set against the contrary views of three other circuits--the Fifth, Sixth and Tenth. Thomas, 991 F.2d at ______ 212; Cassidy, 899 F.2d at 549 n.13; United States v. Hall, 20 _______ _____________ ____ F.3d 1066, 1069 (10th Cir. 1994). Ultimately, there can be no perfect answer on a point that Congress did not consider. The issue before us is unlikely to matter outside of a very few states. Most states do take away from every felon at least one of the three civil rights in question. Vermont (the subject of McGrath) appears to be one of the very few _______ states where a felon does not lose at least one of these rights upon conviction; and even Vermont preserves those rights only for a felon who is not actually incarcerated, McGrath, 60 F.3d at 1007 & n.2. And most circuits have held _______ that all three civil rights must be restored to avoid the -11- -11- federal ban.3 Thus, actual restoration is likely to be required in most cases. Conversely, misdemeanants are normally free of the federal ban by virtue of a different exception in the federal statute (see note 1, above) save where the misdemeanor is ___ punishable by more than two years in prison. This too is unusual, the traditional distinction between felony and misdemeanor being the potential for a sentence of more than one year. W. LaFave & A. Scott, 1 Substantive Criminal Law  ________________________ 1.6, at 41 (1986). This does not preclude the possibility that when Congress understands the implications of its statute for a problem it did not foresee, it may prefer another result. We conclude, therefore, that Indelicato's civil rights, to the extent that they were never taken away, should be treated as "restored" for purposes of the federal statute. Here, the government concedes that misdemeanants in Massachusetts do not lose their civil rights. Accord Ramos, ______ _____ 961 F.2d at 1008. Nor are we concerned with the exception to the exception--the "expressly provides" proviso at the end of  ____________________ 3United States v. Horodner, 91 F.3d 1317, 1319 (9th Cir. _____________ ________ 1996); United States v. Flower, 29 F.3d 530, 536 (10th Cir. _____________ ______ 1994), cert. denied, 115 S.Ct. 939 (1995); United States v. _____________ _____________ Essig, 10 F.3d 968,, 976 (3d Cir. 1993); United States v. _____ _____________ Hassan El, 5 F.3d 726, 734 (4th Cir. 1993), cert. denied, 114 _________ ____________ S. Ct. 1374 (1994); United States v. Driscoll, 970 F.2d 1472, _____________ ________ 1478-79 (6th Cir. 1992), cert. denied, 506 U.S. 1083 (1993). ____________ But see United States v. Dupaquier, 74 F.3d 615, 618 (5th _______ ______________ _________ Cir. 1996). -12- -12- section 921(a)(20)--for the government also concedes that Massachusetts does not restrict a misdemeanant's rights to "ship, transport, possess, or receive firearms." As this case illustrates all too well, the federal statute, as now drafted, gives rise to a host of difficult and obscure issues that Congress ought to resolve by reexamining this statute. It is patent that Congress as a whole did not appreciate the great variety and complexity of state provisions that would have to be meshed with the new federal statute or the odd results that would follow. One of the senators made this very point, but only after the amendment had passed. 132 Cong. Rec. 28,488 (1986) (statement of Sen. Durenberger). Yet, the proliferated case law, the conflicts, and the utter waste of time incurred by courts and litigants are all secondary reasons for revision. The main reason for Congress to revisit the statute is that it does not do the job that Congress expected it to do in reliably sorting out those who present a special danger--and warrant special federal restrictions on possession of firearms--from those who do not. Wherever one chooses to draw the line (and the conflicting policies are for Congress to balance), the present line is too ragged and erratic to protect the public. III. -13- -13- At sentencing in July 1995, Indelicato conceded that he received about 35 kilograms of cocaine from Amilcar Antonio Imbert, as supported by evidence from beeper records. He disputed Imbert's testimony that Imbert had delivered cocaine to Indelicato on many different occasions, including a ten- kilogram transaction, and argued that the total amount of cocaine that he purchased was less than 50 kilograms. The district court concluded that the amount of drugs exceeded 50 kilograms, and sentenced Indelicato to 168 months imprisonment on the drug counts, the minimum of the applicable range for this quantity. On appeal, Indelicato continues to dispute the quantity of cocaine attributed to him. But a review of the record indicates that the government presented enough evidence to support the district court's finding (which need be only by a preponderance) that Indelicato purchased more than 50 kilograms of cocaine from Imbert. Indelicato conceded 35 kilograms, although the more accurate estimate by the judge of the sales recorded by beeper records was 36.25 kilograms. Imbert also testified that he sold ten kilograms to Indelicato on one occasion that would not have appeared in the beeper records.  The question, then, is whether the district court had a sufficient basis for finding an additional four kilograms not represented in the beeper records. The court concluded, -14- -14- based on Imbert's testimony, that Imbert sold cocaine to Indelicato several times each month for at least one-and-a- half months prior to the beeper records and independent of the ten-kilogram sale. Imbert also said that each sale involved whole kilograms (or more) or large fractions of kilograms. We think that these multiple deliveries of such quantities over the course of six weeks provides a sufficient basis for the conclusion that at least four more kilograms should be attributed to Indelicato. Credibility judgments at sentencing are the trial judge's province, United States v. Webster, 54 F.3d 1, 5 (1st _____________ _______ Cir. 1995), and the fact that the district judge rejected some of Imbert's testimony as not credible does not mean that she could not credit other aspects of his testimony. Because the district court's findings for sentencing were not clearly erroneous, e.g., United States v. Wihbey, 75 F.3d 761, 776 ____ ______________ ______ (1st Cir. 1996), we affirm the drug quantity determination. The defendant's convictions and sentence for violating 18 U.S.C. 922(g)(1) are vacated; his sentence on the drug _______ counts is affirmed; and the case is remanded for entry of a ________ ________ modified judgment consistent with this opinion. It is so ordered. ________________ -15- -15-